The next two matters on calendar have been consolidated for purposes of argument, and we'll have the parties on both of those cases come forward. Probably best we could have the appellants at one table and the appellees at the other table. The first case is PN v. Seattle School District, case number 0436141. The second case is Gene Evans et al. v. Grossmont Union High School District, cases 04-56341 and 04-56360. Good morning. Before we start running the clock, we'll do the PN v. Seattle Schools first. And each side has 10 minutes on that, and then on the second case, each side has 15 minutes. I know that that seems a little odd because the issues are basically the same, but sometimes in the arbitrary system that we use to rate cases in terms of their rate, sometimes that a little bit affects it. But I know that the arguments that both sides are making are going to somewhat cross over, but you obviously have your own factual distinctions that I'm sure that you'll be talking about when you're handling your particular case. So we'll start with PN v. Seattle School. May it please the Court, Charlotte Cassidy on behalf of the appellate, PN, and I'd like to reserve five minutes for rebuttal. All right. Good morning. Good morning. In IDEIA, Congress intended to provide disabled children of all economic backgrounds with a free and an appropriate public education. In order to do this, Congress created a statute that empowers the parents of disabled children to advocate on behalf of their children. IDEIA's emphasis on parental empowerment is so pronounced that a district can develop a perfectly appropriate educational plan for a child and still violate the statute if they exclude the parent from the educational process. IDEIA also includes attorney fee shifting provisions, because when it really comes down to it and you have tried everything else, how can the parent of a disabled child effectively advocate for that child if he or she cannot afford to hire an attorney? Another distinctive feature of IDEIA is its emphasis on speedy and amicable resolution of disputes. Well, I think what you really have to focus on here are you've got to focus on the, you know, the cases that we have to deal with. And, you know, we've got the Buckhannon case with the Supreme Court, then we've got Barrios, then we've got Carbonyl. Yes. And so in both of these cases, obviously, we've got the IDEA, we've got settlements, and so we've got to address the issues in terms of what, you know, how to apply Buckhannon to the IDEA in terms of to what, how we're going to say what does judicial imprimatur mean relative to and who are prevailing parties. Correct. Well, Your Honor, in the long line of cases the Ninth Circuit has held that a legally enforceable settlement agreement entitles a plaintiff to attorney's fees if that settlement agreement materially alters the relationship of the parties. I mean, the Court has held that most notably in Richard S. and Barrios in a long line of cases. Both of you have, I think, a catalyst argument here, but the catalyst argument went away with Buckhannon as far as that goes. So we've got to kind of go beyond what else do we have here. Well, Your Honor, what we have here is a legally enforceable settlement agreement, which under a variety of statutes this Court has held justifies attorney's fees. That would include the Natural Resource Conservation and Recovery Act, the ADA in two cases, Richard S. and Barrios. That would include the Equal Access to Justice Act, most recently in Carbondel. And the question is, why would you depart from that line of precedent in an IDEIA case? And what I was getting at at the beginning of my argument is that IDEIA is exactly the type of statute where you would want to grant attorney's fees for a legally enforceable settlement agreement. It's clearly a statute that emphasizes, you know, the parent's role in assuring that their child receives a free and appropriate public education. Well, I agree with you in the sense that it appears, you know, once you're identified and you have the rights to certain, you know, you have the rights to certain things, it seems to be a continuing dilemma that these are costly, and school districts, whether they have a limited amount of money, and it's not infrequent that we see the battles where the only way that the parents get perhaps what they're entitled to under the law is to bring a lawsuit. But the question that I'm struggling with, and obviously there are kids that don't have parents that are in a position to be able to do that or as far as that goes, and that's that obviously the law is what the law is, and whether school districts want to provide things that are costly, if they're required to under the law, they have to. But if it requires some sort of judicial imprimatur, what, in your case, would give us that? Yes, it's a legally enforceable settlement agreement. I don't think, I mean, in this case, it's not a purely private settlement agreement. It's more than a handshake. There's been no assertion by the district that the contract in this case didn't comply with State law governing, you know, valid contracts. And that, plus the fact that there's, you know, the contract embodied a material alteration in the legal relationship of the parties, would justify fees in this case under this Court's precedent. But the problem seems to be that the Court did not order this change in the relationship between the parties. They negotiated it and came to a private settlement agreement. And you're saying because that agreement could be enforced by the Court if either party breaches it, I think that's what you're saying. Yes. That this is sufficient judicial imprimatur or imprimatur of order. But that hasn't happened yet. And it didn't happen in connection with the creation of the settlement agreement. It's something that may occur later on if there's a breach. But it's that would be then to enforce the agreement the parties made. The Court would not be involved in changing the relationships between the parties. Parties change that themselves by their own agreement. Well, Your Honor. I think that's what Buchanan seems to require, as I read its requirement of judicial approval or imprimatur. Well, Your Honor, the issue, though, would be why would this Court depart from its precedent in an IDEI case? The Court did not the Court there was not, for example, in Richard S., there was not a court order incorporating a settlement agreement. There was not in Barrios a court order incorporating a settlement agreement. And in Casa v. Whitman, in Miles v. California, yes. The Buchanan cases. The post-Buchanan Ninth Circuit cases. In Casa v. Whitman, in Miles v. California, in most recently in Carbonyl, the Court again stated, let me see, where are the others here, in Perez, in Tipton v. Whittingham, the Ninth Circuit has stated again and again that a legally enforceable settlement agreement entitles a plaintiff to fees. But Carbonyl deals with judicial imprimatur. It does. Yes. And clearly, Carbonyl does not undercut this Court's holdings in Richard S. and Barrios, because in Carbonyl at the outset, the Court says that the Ninth Circuit, that there are many examples of judicial imprimatur other than consent degrees and final judgments on the merit, which were the types of judicial imprimatur that Buchanan mentioned. After stating that, the Court goes on to say in the Ninth Circuit, the Ninth Circuit has found that both preliminary injunctions and legally enforceable settlement agreements constitute judicial action sufficient to confer prevailing party status. I want to save the balance of your time here at, like, 2 minutes and 48 seconds. Thank you. May it please the Court? I'm Tracy Miller, representing the Seattle School District. And I want to jump right in to address your questions about the post-Buchanan Ninth Circuit cases. Well, it is troubling in the sense that, obviously, in both of these cases, we have school districts that ultimately, you know, someone had, you know, they have to call the school on the carpet and say, hey, this is what this child needs, and then they settle. And it seems that that's a lot what it takes. And I'm not portraying the school districts as evil in the sense that there's a limited pot of money that has to go around. And a lot of times what students are entitled to, what, you know, after they're diagnosed and after it's determined what their particular plan requires and how to deal with their disability, they're entitled to certain services. So in both cases, you know, someone calls them on the carpet and they said, okay, yeah, you're right, and they get it. And it costs them a lot of money to do it. And you have to, you know, you don't have to be a rocket scientist to say, if they agreed to do it, you know, probably they came to the conclusion that they decided, yeah, that's what that child needed. And it's too bad someone had to spend $13,000 and, I don't know, $8,000 or $9,000 to do it. Well, I would submit, first of all, that in the vast, vast majority of cases, it does not require the participation of attorneys for children to get the services they're entitled to under the IDEA. And, of course, those cases that you folks are going to see will be those relatively small percentage of cases where attorneys do participate. But Seattle, for example, serves thousands of children in their special ed programs, and very few of those cases ever even make it into due process, much less to the Ninth Circuit Court of Appeals. In those rare cases where that does occur, I think under Buchanan, we do have a very clear and definitive precedent that is binding on this Court that under the catalyst theory, which was rejected in Buchanan, a private settlement agreement, and that is a purely private settlement agreement that is voluntarily entered into by the parties, does not give rise to prevailing party status. And if you look at the cases, Barrios included, and those that cite Barrios post-Buchanan, you'll see that in every single one of those cases, there is some degree of judicial imprimatur either in the agreement itself or in some prejudgment order that was issued by those courts. Well, would you agree that it doesn't have to be just a consent degree? I mean, that, you know, I mean, if we say that it does have to be judicial imprimatur, what sort of things would be judicial imprimatur to you? Well, for example, a preliminary injunction, which is one of the cases cited by appellant, was held by the Ninth Circuit to be sufficient judicial imprimatur. In Barrios, the issue or the settlement agreement itself, so you have an ADA case where they settle their substantive claims. In the agreement itself, the parties agreed that the court would retain jurisdiction over the issue of who is a prevailing party and whether or not fees would be awarded and how much. So you have within the agreement itself essentially the parties submitting themselves to the jurisdiction of the court for oversight, absent their being able to agree to the contrary of the fee issue. In our case, the only thing the settlement agreement says about fees is to preserve the issue. Neither party submits to the jurisdiction of the court. Neither party admits that fees would be awarded. Neither party stipulates in the agreement that any body would have jurisdiction over the issue. Our agreement, unlike the agreement in Barrios, has no access, if you will, to judicial opinion, oversight, or imprimatur with respect to the fee issue. Other types of oversight that have been described in the post-Barrios cases include situations where the party's stipulation or settlement agreement is somehow incorporated into an order of dismissal. In a recent case decided by Judge Kuhnhauer, he felt that a remand order from this body to the district court that has instructions to the district court would have sufficient judicial imprimatur. In fact, it was a nonissue. So there are several options for what constitutes sufficient judicial imprimatur, but I would submit that in our case there's absolutely no judicial imprimatur or oversight of any ilk. And I would submit also that under Buchanan, what we have here is a thinly veiled attempt or run, again, at pure catalyst theory argument that was rejected in Buchanan. And implicitly, I would add, rejected by this Court's application in Shapiro of Buchanan to IDEA cases. And there are plenty of reasons why, even if one were to read Barrios to say that under some fee statutes you can continue after Buchanan to award fees for purely private settlements, there's plenty of reasons under the IDEA for that not to occur. If you look at the IDEA's fee provisions, they limit fees to prevailing parties. So once a party prevails, and it's your job to figure out what that means, but once a party prevails, under the IDEA, there are express provisions that actually limit fees to that prevailing party. To me, this suggests that, contrary to the arguments of the parents in this case, the IDEA actually provides a better basis for denying fees under the catalyst theory for pure settlement agreements, because the IDEA's fee provisions themselves show that, unlike other fee-shifting statutes, fees are not the primary purpose of the IDEA. Education is. The statute over and over emphasizes settlement, cooperation. I also want to point out one thing post-Buchanan that is important for this Court to consider. Buchanan stated that the statutory language is determinative of whether or not a party can obtain fees under a fee-shifting statute. They looked at the ADA. They didn't see any language that supported the catalyst theory, and so rejected the catalyst theory. We learned from Buchanan the statutory language is quite important. Since Buchanan, you have, I believe it's four or five circuit courts that have applied Buchanan to reject fees for pure private settlements. And by pure private settlement, I mean a settlement agreement that doesn't have any built-in, any access to the judicial process. Congress has recently reauthorized the IDEA in 2004, post-Buchanan and post-these circuit court decisions that squarely rejected the theory promoted by the appellants here. Congress must be assumed to be aware of the decision in Buchanan and those circuit court decisions, and yet did nothing to amend the IDEA fee provisions to allow for an award of fees for a private settlement agreement. And I think that that ---- You know, the pursuit of this policy is going to lead to one of two things, as I see it. One, either when these settlement agreements are called private agreements are negotiated, the students are going to insist on including an attorney fee provision in the agreement, right? Absolutely. Negotiate for that. Or, absent that, I suppose they can force them out of the court so they can collect fees, because then they'll ask the court for fees. Correct. I don't know if it's a ---- if that's a wise use of resources or not. Well, I think you bring up a very good point, which is that if this Court adopts the rule that every other circuit has adopted and that we're urging you to adopt, we have a situation where fees are not awarded for private settlement agreements. But nevertheless, as the parents in the district negotiate, fee liability is a risk. For instance, let me ask you in this case, did the matter of fees come up at all during the negotiations on this settlement? It was reserved in the agreement. Whether it came up or not, I do not know the answer to that. Well, so they obviously talked about it, but they didn't resolve it. Correct. I mean, people were thinking about it. Correct. The issue was reserved. I will tell you, though, that post-Buckanen, that's exactly what happens. We sit down to settle the programming issue for the child, and wrapped up in that settlement agreement is the parent's attorney's fees, because at that point in time, the district has that exposure. That's a risk that's worth settling, not because fees can be awarded at the settlement agreement, but because fees could be awarded to the party who prevails at hearing. So there's still the opportunity for parents to get their fees in a compromised situation. They're not prejudiced in any way, nor does it deter from settlement of special ed cases for this Court to adopt the rule that's been adopted uniformly by every single circuit to consider the issue, that fees do not – that purely private settlement agreements and IDEA cases do not give rise to an award of attorney's fees. Thank you very much for your consideration. Thank you for your argument. Ms. Miller, before you go away, you pronounced this Buckanen. I pronounce it Buchanan. Have you been to some seminar where they give you the correct pronunciation? I only did because there's a K in there, and typically Buchanan is C-U-C-H. So that's why I say Buckanen. But you've never – but you haven't heard the gurus say it. No, and I did not call anyone who actually litigated the case to find out. Well, we always wonder these things. I noticed a difference in imprimatur, too. So we've had a little – yes. That's going to be my next question. Thank you. Let's see. Rebuttal. To address one of Justice's questions about whether you can just negotiate for  I-D-E-I-A is most of the time parents are not seeking expensive services. This is not a big – they're very important services, but large monetary amounts are typically not at stake in an I-D-E-I-A case. So most parents are seeking something as simple as speech and language services from the school district or inclusion of a disabled child in a mainstream general ed classroom. That is a very, very important right for that child, but it's not necessarily that expensive. But the parent can't obtain it any other way and has a right to free and appropriate public education. If the school district delays dealing with the issue, which is what happened in this case, we negotiated for seven months, we went to four meetings, we wrote multiple letters and filed a lawsuit, and, you know, two weeks before court, we're finally – you know, finally the school district approached us about settling the case. If the school district delays dealing with the issue, then offers the parent everything the parent wants, which may not be a very expensive item for the school district. The parent has already had to spend a lot of money on their attorney getting prepared, and they have no choice but to accept that settlement agreement. So arguing about attorney's fees would be fruitless since the administrative law courts don't have the authority to award fees. I mean, you can't go on and insist that the, you know, you're going to do something because the administrative law judges can't award fees. So, you know, the statute would be gutted for all but the most expensive placements. What about, though, the argument – I don't know if I'm going to say Buchanan or Buchanan or whatever now, but what about the argument, though, that Congress has come back and acted again on the IDEA, and they know that these cases are out there, and she did make a correct statement of the law. They're presumed to know what's going on. And if they had wanted to, they could have said private settlements, parents are entitled to, you know, to attorney's fees, and they didn't. They didn't, but, Your Honor, the law of Buchanan concerning private settlement agreements is in a footnote, and all the circuit courts haven't spoken on that issue, and fewer of them had spoken when IDEA was reauthorized. So I don't think we can assume that the law was clear at that time. Yeah, but that's a principle under the law, that Congress is presumed to know, you know, what court cases are out there. And I think that, you know, I think these areas are, you know, people are pretty engaged about them on both sides. So, you know, anything that's ADA, anything that's IDEA or, you know, all of those things, you know, they get a lot of expert testimony on these things about people that are concerned about what the problems are and what these services are. But, anyway, that's the balance of your time, so. Thank you. All right, next we have Gene Evans versus Grossmont Union High School. So appellants and appellees are sitting together. Oh, okay. Good morning, Your Honors. Paul Corelli and Daniel Shinoff sitting at the council table for the Grossmont Union High School District. Thank you for inviting us up here to Seattle from San Diego. So are you going to be making all the arguments? Are you going to be using all the time? I'd like to reserve two minutes for rebuttal. Okay, thank you. We've had a lot of case law decisions since this case was briefed almost a year and a half ago, and so I just wanted to clarify the district's positions now that some of this case law has come down. I call it the carbonyl case. I don't know if that's the correct pronunciation. It talks about the two prongs under the Buchanan prevailing party test. In this appeal, it only attacks the second prong, which is the judicially sanctioned prong. The district also agrees now with the majority of circuit courts that have held that a judgment qualifies, a consent decree qualifies, and anything that is the functional equivalent of a consent decree qualifies as providing prevailing party status. In this case, however, in neither case, in neither the Evans case nor the Noyce case, there is nothing in those settlement agreements that have anything to do with attorney's fees. Not only that, but there was no discussion of attorney's fees during the mediation whatsoever. You're aware of the facts on both cases? Yes. But in one, the school district won, and in one, the school district lost, right, in the cases. So is there anything in your case that would make your case stronger than the... I'm not sure I understand. Do you want to point out any factual difference in your case that would make... Exactly. Okay. Yes, well, I think the one thing is that... Because they won and you lost. Right. Well, in their case, they had a bare minimum more, which was that they reserved the attorney's fees issue here. So essentially what you're saying is they won and they actually have weaker facts than you do. Yes, I am. This circuit hasn't taken a look at the IDEA yet with respect to Buchanan in terms of how the administrative hearing works. We had that discussion yesterday. I still call it Buchanan, I'm sorry. Have there been any seminars? Any MCLE classes or something? I have not heard it. I was tempted to call West Virginia, though, to find out what the correct pronunciation was. The Second Circuit, though, recently in this AR case and also the Mr. L case, both of which were cited in letters to the court, specifically deals with what happens in the IDEA under an administrative hearing. And what they said was they basically substituted the hearing officer for the district court and basically said you need administrative imprimatur rather than district court imprimatur. And in the AR case, they said when the settlement agreement is wrapped into the administrative law judge or the hearing officer's order, then that will sufficiently have the administrative oversight or imprimatur to constitute the prevailing party. In the Mr. L case, however, the parties went to the hearing. Do you think that that's correctly decided? Do you think that the administrative law judge would satisfy the judicial imprimatur? Well, it's kind of like pounding the square peg into the round hole, so to speak, but I think that it is somewhat analogous. And the district's position is that if the administrative hearing officer were to wrap that into an order, that that may very well constitute the sufficient imprimatur. But we don't have that in this case. What we had was a mediator who was not a hearing officer, someone that was a complete neutral. I wanted to address something that the attorney for PN mentioned in terms of the Buchanan being dicta. And the rule of law enunciated in Buchanan was essentially they had to address what the definition of prevailing party was. They came up with a rule of law that said judgment or consent decree. And implied in that rule was that private settlement agreements don't qualify within the framework. And even though in a footnote it's discussed the reason why that private settlement agreements were left out of that rule, the district contends that the rule itself implies that private settlement agreements aren't enough and, therefore, the settlements in this case would not qualify. It's as if, and I'll make an analogy here, it's as if there was a traffic law that said you can enter an intersection only if it's a green light or a yellow light and says nothing more. Implied in that rule is that you cannot enter on a red light. And we think that the subset of private settlement agreements, therefore, doesn't follow into the broader rule, even though the circuit courts have somewhat expanded on what the definition of consent decree is. Would you agree that they've met the first prong that of the task for the prevailing party, that the settlement agreement works a material alteration of the legal relationship of the parties? Yes, we do not contest that, Your Honor. Okay. We're only contesting the judicial sanction prong. All right. And also to address counsel's arguments concerning involving lawyers in these situations, if the test is going to be that any private settlement agreement under the IDEA is going to qualify for fees, what we think that's going to do, it's going to take, when a lawyer gets involved, it's going to take the case out of the arena of the IEP meeting, which is collaborative, and turn it into a due process hearing and mediation, which is adversarial. In other words, the student's attorneys can say to the parents, if we go to an IEP and we ask for certain things and they agree, you have to pay me. But if we go to a due process hearing and mediation and they agree to those things, then they have to pay us, and then you don't have to worry about it. So it's taking it out of that collaborative process and putting it into a more adversarial just for the sake of awarding fees. Well, what would you say would satisfy the judicial sanction part of the judicial imprimatur? What type of things would? Having the settlement agreement wrapped into the administrative hearing officer's order. I think that that at least would entail sufficient judicial oversight into the process, what's going on between the parties. That would constitute the oversight that's necessary so that, in contrast, when we have a mediation, which is just private parties discussing, there's no evidence in either of these cases as to why those cases were settled. I mean, there could be any number of reasons why a school district would want to settle during mediation, none of which may be that they feel that the plaintiff's case has merit. They may feel that it's meritless, but there may be risk involved and they want to settle. So there's a give and take, and it's certainly a process in which the school district does take calculated risks when they get to a due process hearing. And we agree with the Seattle School District that this is, there's only a fraction of cases in which the parties have to end up going to due process. This is really quite a good system when the parents and the students work collaboratively. These are people in special education that really care about students. The appellee's brief appears to imply that the school district's only interested in attorney's fees. They're not, they're interested in making sure that the student gets the best education that they have. So I'm going to reserve the rest of my time. Good morning. Good morning, and may it please the Court, I'm Michael Cochran on behalf of Appellee Gene Evans and Appellee Lisa Noyes. The Ninth Circuit Court of Appeal held in the case Barlow-Gresham Union High School District v. Mitchell that a parent who achieves relief through a settlement prior to a special education due process hearing is the prevailing party under the Education of the Handicapped Act, which is today referred to as the Individuals with Disabilities Education Act. I have to go back a little bit further to understand the procedural posture of this case. What kind of action did you file in the district court? The action was strictly for fees for the district court. Now, as far as I know, IDEA doesn't authorize an action strictly for fees. The IDEA authorizes an action for fees at 20 U.S.C. Section 1415, Subdivision I. No, no, it authorizes fees in an action brought under that section, but it only authorizes an action under that section for a party who is aggrieved by a finding or a decision. No, Your Honor, that's a separate section. Subdivision I is specifically for attorneys' fees. There is another subdivision in Section 1415 that authorizes a review of a hearing officer's decision. And that is actually a point I will be making later as to how the IDEA is different from the statutes interpreted in Buckhannon. And by the way, this former special ed teacher who taught phonics is Buckhannon. So what section authorizes an action for fees only? Section 1415, Subdivision I. Subdivision I? And to distinguish that from the court. I doesn't authorize any action at all. If you read it, I don't see. Show me where in I it says a party can bring an action for fees under IDEA. Well, it says that a party is entitled to reasonable attorney's fees as part of costs and under the Federal law of the IDEA. But that implicitly in an action brought under IDEA. It doesn't say you can bring an independent action. Well, yes, it's an action under the IDEA. You can bring an independent action. Show me the words in the statute under Subdivision I. Well, it's under the IDEA, which is a Federal law, so it's enforceable in Federal court. No, but the Federal law says you can bring an action to challenge, you know, to challenge an adverse finding. A party aggrieved by a finding can bring an action to challenge that finding. It doesn't authorize any other type of action. Well, then I'd also point out that under California Education Code, Section 56505, it authorizes a suit for fees in district court. And under this circuit's decision in Union School District v. Smith, that a State law is enforceable in Federal court as long as it's not inconsistent with IDEA. So you're talking about, just a minute now, an action under ---- I don't see any such cause of action in your complaint. Well, there is not one. You don't have such a cause of action in your complaint. There is not one. So let me get back to the action you do have under IDEA. Show me under IDEA where it authorizes an action solely to collect fees for attorneys' expenses expended in a private settlement negotiation. Well, Your Honor, I submit that Section 1415i, authorizing attorney's fees and costs. Well, what language in i are you depending on for that authorization? That ----  You know, I don't have the exact wording in front of me. It starts by saying attorney's fees may not be awarded and related costs may not be reimbursed in any action under this section for services performed after such and such a time. Your Honor, jurisdiction has not been waived in this case or has been acknowledged in this case in the answer? I'm talking about the authority to award fees. Well, again, the authority to award fees I've just maintained is under the IDEA. So the only section you're depending on is subsection i of 1450? Yes. Okay. The appellant does not distinguish this case from Mitchell. Instead, it contends that Mitchell was overruled by a dicta in Buckhand, suggesting that a settlement agreement must be incorporated into a consent decree. This court rejected that argument in Barrios v. CIF, which held that a legally enforceable settlement agreement confers prevailing party status. This court further, in Tipton-Whittingham v. City of Los Angeles, acknowledged that this satisfies judicial imprimatur. These ---- between Barrios and Mitchell are dispositive in this case. And the appellant has conceded that the settlement agreements in this case are legally enforceable in state court. I'd like to just quickly go over my second argument, which is the IDEA does not incorporate the prevailing party definition of Buckhand. Very quickly, this court held in Perez-Arellano v. Smith that ---- Let me ask you this in terms of just factually, as your case is distinguished from the other case. Your case doesn't ---- your settlement doesn't say anything about the parties reserving attorney's fees, right? No, it doesn't. And let me address that, too. The appellant is trying to distinguish this case from Barrios on that ground. Rather than reiterate the district court's analysis of that, I'd like to supplement it by pointing out that this clause in Barrios did not change the legal relationship between the parties. It did not say that Barrios was the prevailing party, nor could this clause impose jurisdiction on the federal court over a case or controversy where federal jurisdiction was lacking. So this was, as the district courts held, in support of the holding, which was that a legally enforceable settlement agreement satisfies Buckhannon. Perez-Arellano v. Smith indicated that the prevailing party definition of Buckhannon might not apply if the purpose, history, context, and statutory structure indicates a different meaning. The purpose in IDEA, as expressed by the IDEA, is found in 20 U.S.C. section 1400 D.1, which is to provide a free, appropriate public education, and expressly, it states, to ensure that the rights of disabled children and parents of such children are protected. So the congressional priority given to enforcement is evident from the statute itself. Secondly, another purpose is swift resolution of educational claims regarding the placement of a disabled child. The T.D. v. the Grange School District dismissed this argument because they said, well, that also applies to the statutes in Buckhannon. However, if you're trying to define congressional intent under the Perez-Arellano framework, special education matters are more clearly required the swift resolution of educational claims. 34 CFR 300.511A indicates that these cases have to be resolved in 45 days of filing, absent good cause for a continuance, and then it has to be a specific extension for only the length of time that the good cause is. And what would be the relevance of that for our consideration? I understand why they would have it that way, because you don't want kids to be graduated from high school when they've made a claim in second grade. Well, it distinguishes the T.D. analysis that, well, a swift resolution is important in the cases in Buckhannon as well. But here, Congress shows that it's especially important. It sends a message that we want it resolved in 45 days. It doesn't reflect the reality, but it does show that Congress places a great emphasis on swift resolution. Well, how does that help you? Well, it helps me because, as Judge Lorenz noted in the district court decision in Noyes, applying the Buckhannon definition of prevailing party status would extend these hearings, as parents would have to go to hearing in order to be entitled to attorney's fees. Another thing, in regards to the context, and this is a point I missed in my brief, it's also a point that was missed by the circuit courts at the time that I wrote my brief, is that the context in the district court decision, the statutes in Buckhannon, is within a judicial process, as noted by the A.R. court that Mr. Corelli discussed. And as he said, the A.R. court said, the prevailing party definition in Buckhannon doesn't fit the IDEA. In Buckhannon, they were all judicial actions. And as the Supreme Court held in the Crest Street community case, those 1988 doesn't fit the IDEA. It doesn't allow for attorney's fees at that level. Every circuit in the United States holds that attorney's fees are contemplated at the administrative level in the IDEA. All right. If you, you obviously don't think that judicial imprimatur is required, correct, or judicial sanction. I don't. But this court has held that if it does, under Tipton Whittingham v. City of Los Angeles, the Ninth Circuit, not the California case, that an enforceable settlement agreement satisfies that requirement. So you would read it very broadly and just say if it's an enforceable settlement agreement, that would satisfy? Under the law of the circuit, yes. But, again, the Buckhannon case refers to judicial imprimatur, judicial consent decree, judicial judgment. It doesn't fit the administrative process under the IDEA. And I, the, another thing is, as I pointed out in my brief, the, the concurring opinion in Buckhannon was addressing concerns of, countervailing policies regarding lawsuit abuse. That's why they want judicial imprimatur. However, and that's not mere judicial activism. The statutes that they were interpreting were one-sentence enactments, as the Weber Law Review article I cited, indicated, practically begged the judicial intervention to fill in their interstices. However, in IDEA, they address these concerns. They address the concerns of law attorneys' fees getting out of control by allowing essentially the equivalent of a Rule 68 offer. They address parents acting badly, because fees can be equitably reduced based upon the parent's behavior. They, they don't allow attorneys' fees for an attorney's attendance at an IEP meeting if the parent's going to file for due process right before the child's annual IEP meeting, and then demand fees when there's no, there's no dispute at the IEP meeting. They, they address these concerns. And so there's no need to apply Buckhannon, which, as Mr. Crowley said, is trying to fit a square peg into a round hole into the context of this administrative process. Also, I'd like to, to address some of the concerns in the TD versus the Grange School District, which is the most thorough analysis of the applicability of Buckhannon's prevailing party definition. It indicated that, through some legislative history, that the IDEA is to be interpreted, interpreted consistently with Hensley versus Eckerhart, which interpreted Section 1988. What that doesn't, which was specifically referenced in Buckhannon, what that doesn't mean is that the IDEA is to be interpreted consistently with Hensley versus Eckerhart, which interpreted consistently with Hensley versus Eckerhart. What that doesn't acknowledge, however, is that Section 1988, again, doesn't allow attorney's fees for cases resolved at the administrative hearing level. It also doesn't acknowledge that at the time of that legislative history, the catalyst theory was a viable source of recovery. And a ---- Roberts. No, Mr. Cochran, if you could, maybe, and maybe I just missed it somewhere. If we were to assume for the moment that a judicial imprimatur is required, where does it exist in your case? Well, again, under Tipton-Whittingham versus City of Los Angeles, it indicates that an enforceable settlement agreement carries with it. The fact that you've entered into the agreement, a voluntary agreement, which you've entered into it, and now you have, well, something. You have a contract, and if a party breaches a contract, the other party can file a legal action. That's your basis. And you say that because we have a body of law that would permit you to enforce a private settlement agreement, the private settlement agreement was brought about by judicial imprimatur or can be enforced through judicial proceedings, which, of course, any private agreement can. Well, I should point out that this Court held in Porter versus Manhattan Beach Unified School District that a settlement agreement is enforceable in Federal court. Right. In addition to that, the reauthorized IDEA, the IDEA-2004. We have no question that this agreement is not enforceable. I mean, you could ---- you can bring an action for a breach. And you say that alone gives you enough for the judicial imprimatur that that's required. Yes, sir. All right. You've about used your time, so you might want to wrap up. All right. Again, I guess I just wrap it up by saying that Barrios does not adequately protect special education students. In this case, it does. But frequently, these cases involve situations in which the district is trying to prevent an action, a unilateral action of the school district, such as in the case cited by Appellant J.C. versus Regional School District, where they tried to expel the student and then drop the expulsion process. I had this very same case with Grossmont once before. Another example cited by Grossmont was the Dover versus Boston Public Schools, where the school district waited until five minutes before the hearing, submitted an IEP that was granted the exact same placement the parent was seeking throughout the process. This is something I've been seeing in California as well, where they're trying to get around Barrios by not ---- they refuse to sign a settlement agreement, but then they'll send the parent an IEP form offering a more appropriate placement, and then allege, well, it's not judicial imprimatur, it's just because of changed circumstances. For this basis, the purpose is expressed under the IDEA to ensure enforcement would not be satisfied under the definition of prevailing party status in Buckhannon, nor does it fit the context of an administrative hearing and the statutory structure. All right. Thank you for your argument. The district did not assert the jurisdictional question raised by Justice Tashima in its brief, but it does so now. And having looked at section ---- With the idea it's never too late? With the idea that jurisdictions never wait. And having looked at 1415, it does not appear that where there is a private settlement agreement that the 1415 gives the district court such jurisdiction to determine who is the prevailing party, only after a hearing officer's decision. So the district will make that argument as well. Well, who says you don't learn anything when you come to oral argument? In terms of the ---- That circuit considered all the policy arguments that he has made and rejected, all of them, and specifically said that the IEP team is the mechanism for compromise and cooperation, rather than the adversarial confrontation and the atmosphere would be jeopardized if we were encouraged participation of counsel in the IEP process by awarding attorney's fees for settlements achieved at that stage. And I think that that rationale carries over where we're going to start awarding attorney's fees for the private settlement agreements. What counsel raised was this idea that once a due process hearing is requested, that the school districts are rolling over, so to speak, and giving the student everything they want, and then moving to dismiss the case as moot, which would be a purely voluntary change in their position, which is clearly barred by the Buchanan case in terms of prevailing party status, because then all you have is a functional of a catalyst. The due process hearing was filed, change of position, no agreement, no judicial oversight, no administration. Well, I think that everyone here knows that this is a very important, you know, it's an important social issue, and we have to deal with it. And anyone that's been going to court for any period of time, which all of us have, that, you know, sometimes one side is completely in right, sometimes the other side is, and it really is factually dependent. But we have to, you know, we have to deal with the context of the law in these situations. And I don't have any doubt that sometimes parents act badly and sometimes that school districts act badly. But in terms of this particular case, we've got to wrestle with, you know, what's required under the IDEA, what does, you know, what I thought it, you know, in terms of what you can bring and what does Buchanan mean relative to these type of lawsuits. And that's not to say that tomorrow a better policy might not come about because of it. But we've got to deal with the here and now. Well, isn't it true that Buchanan, at the very end of that... You don't get to ask us questions. Thank you. The Buchanan case at the very end talks about taking the policy really out of the equation because we're talking about the term prevailing party, which the Supreme Court says is a term of art. And therefore, the policy arguments may not necessarily apply because they're going to apply that term across a variety of statutes. And even though some of the other circuits have addressed the policy arguments made by the students, they have done so with reservations, saying, you know, we are mindful that the Supreme Court has said that policy arguments really are not appropriate in defining the term prevailing party. And I think that one of the reasons the Supreme Court in Buchanan did that was realizing that there are suits that the Supreme Court has filed, which may not be frivolous but may not have merit, and the parties may settle for any number of a variety of reasons, which I had suggested earlier. Finally, plaintiff cites the Tipton case, which, if I recall, was a question that was certified by the Ninth Circuit to the California Supreme Court to find out in the action under the FIHA, under the California law, whether a California student would be eligible for a patent. And California still held the catalyst rule, and California still does. But this action is not brought under California law. It's brought under Federal law. And so, therefore, that case would not apply. So thank you for your time. All right. Both of these matters will now stand submitted. Thank you very much, both sides, for your excellent argument in these cases. While all of our cases are very important, and we take each of them just as seriously as the next, this is obviously an important legal issue, and we appreciate the helpful argument of both sides. Thank you.
judges: Thompson, Tashima, Callahan